UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHENSON EQUIP.,

                      Plaintiff,

v.                                                      5:10-CV-1517
                                                     (GTS/TWD)
ATS SPECIALIZED, INC.; and
ATS TRUCKING SERV., INC.,

                      Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

LAW OFFICE OF DAVID MAGNARELLI          DAVID J. MAGNARELLI, ESQ.
  Counsel for Plaintiff
5111 West Genesee Street
Camillus, NY 13031

WEBER, GALLAGHER, SIMPSON,               JAMES A. WESCOE, ESQ.
STAPLETON, FIRES & NEWBY L.L.P.
  Counsel for Defendants
2000 Market Street, Suite 1300
Philadelphia, PA 19103

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this civil action filed by Stephenson Equipment ("Plaintiff") against ATS Specialized, Inc., and ATS Trucking Service, Inc. ("Defendants"), are Defendants' motion for summary judgment (Dkt. No. 23), and Plaintiff's cross-motion for summary judgment (Dkt. No. 26). For the reasons set forth below, Defendants' motion is denied, and Plaintiff's cross-motion is denied.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint and Defendants' Answer

Generally, Plaintiff's Verified Complaint alleges as follows: (1) Plaintiff is in the business of selling and renting large construction equipment, including construction cranes; (2) Defendants are in the business of carrying freight, including specialized heavy equipment, by motor vehicle for hire in interstate commerce; (3) on or about August 8, 2008, Plaintiff contracted with Defendants for the shipment of a crane from Baltimore, Maryland, to Troy, New York, between August 11, 2008, and August 13, 2008; (4) specifically, the crane was a Manitowoc Model 8500 Crane with a 150-foot-long main boom, a 60-foot-long fixed jib, a 12-ton ball hook, a 60-ton hook block, and a third drum ("the Crane"); (5) pursuant to the agreement, shipment of the Crane was to take place in five separate loads in "assembly order," to allow Plaintiff to assemble the Crane as each segment was delivered; (6) on or about August 11, 2008, Plaintiff caused the Crane to be delivered to Defendants in Baltimore, Maryland, in undamaged condition; (7) however, the first three loads were not delivered by Defendants to Troy, New York, until August 14, 2008, and the remaining two loads–which were combined by Defendants into a single load–were not delivered by Defendants to Troy, New York, until August 18, 2008; (8) moreover, the final load (containing the "boom top" and "butt section" of the Crane) was delivered by Defendants to Troy, New York, in a damaged condition, due to improper loading by Defendants, which caused the "boom top" and "butt section" to improperly rub and bump against each other and other pieces of equipment being transported; and (9) as a result, Defendants breached the agreement in that they did not deliver the Crane (a) in "assembly order," (b) on time, and (c) undamaged. (*See generally* Dkt. No. 1, Attach. 1.)

Based on these factual allegations, Plaintiff asserts the following three claims against Defendants: (1) a statutory claim for violation of the Carmack Amendment to the Interstate Commerce Act; (2) a state common-law claim for breach of contract; and (3) a state common-law claim for negligence. (*Id.*) As relief, Plaintiff seeks $78,474.47 in damages plus costs and interest as provided by statute. (*Id.*) Familiarity with the remainder of Plaintiff's Verified Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

Generally, liberally construed, Defendants' Answer asserts affirmative defenses including those based on the limitation-of-liability provisions contained in the Bill of Lading and Rules Tariff, as well as related defenses contained in the Carmack Amendment. (Dkt. No. 4.) In addition, Defendants' Answer asserts a counterclaim against Plaintiff for $8,564.40 in charges incurred by Defendants, but not paid by Plaintiff, for Defendants' shipment of the subject cargo from Maryland to New York between approximately August 11, 2008, and August 18, 2008. (Dkt. No. 4.)

**B.     Parties' Briefing on Their Cross-Motions for Summary Judgment**

Generally, in support of their motion for summary judgment, Defendants assert the following two alternative arguments: (1) pursuant to the Carmack Amendment to the Interstate Commerce Act (which permits a carrier to limits its liability to a value established by a written declaration or agreement), Plaintiff is entitled, as a matter of law, to only $2,700 in damages, because it is undisputed that (a) the damaged "boom top" and "butt section" of the Crane weighed 1,080 pounds, (b) the Bill of Lading limited liability of $2.50 per pound on standard cargo liability, (c) the Rules Tariff gave Plaintiff the choice of higher freight rates for higher

limitations, and (d) Plaintiff, a reasonable commercial enterprise, made a deliberate and informed choice to accept the lower limitation and decline the option of a higher limitation of liability for a higher freight rate; and (2) in the alternative, pursuant to common-law rule that special or consequential damages are generally not recoverable in an action for breach of contract unless the shipper gave the carrier notice of the need for special handling and thus the foreseeability of such damages (which the Carmack Amendment has not altered), Plaintiff is entitled, as a matter of law, to only $20,094.22 in damages, because it is undisputed that (a) Plaintiff never gave Defendants notice that any special damages would be incurred in the event of a delayed or damaged delivery, and (b) the actual damage to the boom amounted to only $20,094.22. (*See generally* Dkt. No. 23, Attach. 2 [Defs.' Memo. of Law].)[1]

Generally, in opposition to Defendants' motion for summary judgment, and in support of its own cross-motion for summary judgment, Plaintiff asserts the following four arguments: (1) Plaintiff has established a prima facie case against Defendants as a matter of law, shifting the burden to Defendants to prove they were free from liability, which they have not done; (2) the limitation-of-liability provision contained in the Bill of Lading and Rules Tariff is unenforceable pursuant to the "material deviation doctrine," because the promise to ship the Crane in five

---

[1] Defense counsel is respectfully reminded that, in this District, memoranda of law must contain a table of contents. N.D.N.Y. L.R. 7.1(a)(1). Defendants are also respectfully reminded that, with regard to the affidavit-like document submitted along with their memorandum of law and Statement of Material Facts (Dkt. No. 23), legal arguments must be submitted in a memorandum of law and statements of undisputed material facts must be submitted in a Statement of Material Facts. N.D.N.Y. 7.1(a)(1),(2),(3); *see also Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *23 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("[T]o the extent that Plaintiff's counsel is attempting to present arguments in refutation of the arguments advanced by Defendant ..., the place for those arguments is in Plaintiff's opposition memorandum of law.... The Court does not have the duty to search through the numerous documents filed by Plaintiff in search of Plaintiff's legal argument.").

different segments in a designated order (which Defendants breached, causing damages) was designed to lessen the risk of loss; (3) in the alternative, the limitation-of-liability provision contained in the Bill of Lading and Rules Tariff is unenforceable, because (a) it failed to give Plaintiff reasonable notice of its applicability in the event of an intentional breach, and/or (b) the Rules Tariff ambiguously (if not unequivocally) stated, in an "exception" section, that the choice of higher freight rates for higher limitations did not apply when the declared actual cargo value on the Bill of Lading was not more than $100,000 per trailer (depriving Plaintiff of a choice); and (4) contrary to Defendants' argument, the Carmack Amendment permits the recovery of foreseeable consequential damages (such as the reasonable cost of repair and restoration, fees incurred, and non-speculative lost profits) and, here, Defendants had notice of the possibility of special damages (specifically, through their knowledge of the fact that the Crane was being shipped to an active job site, and the fact that the consignee for the shipment was not Plaintiff but a non-party). (*See generally* Dkt. No. 27 [Plf.'s Opp'n Memo. of Law].)[2]

Generally, in their combined reply-opposition memorandum of law (as required by Local Rule 7.1[c] of the Court's Local Rules of Practice), Defendants assert the following four arguments: (1) the "material deviation doctrine," which is rooted in maritime law (and the need to avoid special problems resulting from maritime transit), does not apply to motor carriage cases unless the parties have discussed a specific requirement to secure the cargo during transit and the shipper paid additional charges to obtain that additional service, which did not happen here; (2) moreover, the limitation-of-liability provision is enforceable, because (a) the fact that a breach was intentional (even if true, which it is not) does not render the provision unenforceable,

---

[2]  Plaintiff's counsel is respectfully reminded that memoranda of law must contain a table of contents, be double spaced and consecutively numbered. N.D.N.Y. L.R. 7.1(a)(1), 10.1(a)(3),(7).

and (b) the "exception" section of Rules Tariff relied on by Plaintiff applies only where the shipper both declares a value greater than $2.50 per pound and declares a total value less than $100,000, neither of which happened here; (3) while Defendants acknowledge that generally a court may award consequential damages in Carmack Amendment cases, here the circumstances that purportedly gave Defendants notice of the possibility of special damages (i.e., the that the Crane was being shipped to a non-party on an active job site) were not sufficient to notify Defendants that damages would flow from a breach of contract; and (4) at the very least, Plaintiff's cross-motion should be denied because (a) it has failed to establish the third element of a prima facie case against Defendants (i.e., regarding damages), and (b) it has failed to establish that Defendants did not give Plaintiff a choice of a higher limitation, or that Defendants had notice of the possibility of special damages. (*See generally* Dkt. No. 31 [Defs.' Reply-Opp'n Memo. of Law].)

Finally, in an unauthorized reply on its cross-motion,[3] Plaintiff assert the following four arguments: (1) the limitation-of-liability provision contained in the Bill of Lading and Rules Tariff is unenforceable, because those documents do not clearly state that Defendants' liability will be limited even where Defendants fail to abide by the terms governing the manner of shipment of the Crane (especially where they fail to do so intentionally); (2) in the alternative, the limitation-of-liability provision contained in the Bill of Lading and Rules Tariff is unenforceable, because the cases cited by Defendants, which are factually distinguishable from the current case, do not preclude the extension of the "material deviation" doctrine to the transportation of goods by land; (3) moreover, the fact that the Bills of Lading and shipping

---

[3] Plaintiff is respectfully reminded that replies on cross-motions (like sur-replies on motion) may not be filed without prior leave of the Court. N.D.N.Y. L.R. 7.1(c).

forms repeatedly indicate that the that the Crane was being shipped to a non-party (American Iron, Inc.) on an active construction site was sufficient to notify Plaintiff that damages would flow from a breach of contract, including the loss of profits from Plaintiff's lease of the Crane to the non-party and the cost to Plaintiff of removing the Crane from the construction site; and (4) at the very least, Defendants' motion should be denied because genuine disputes of material fact exists as to whether (a) the limitation-of-liability provision was clearly disclosed and fairly negotiated and (b) Defendants knew the nature and extent of the damages that would result in the event of a breach. (*See generally* Dkt. No. 33 [Plf.'s Reply Memo. of Law].)

C. **Undisputed Material Facts on the Parties' Cross-Motions**

Both Defendants and Plaintiff have violated Local Rule 7.1(a)(3) of the Court's Local Rules of Practice, which requires (1) a Rule 7.1 Statement setting forth in numbered paragraphs each material fact about which the movant contends there exists no genuine issue supported by a specific citation to the record where the fact is established, and (2) a Rule 7.1 Response admitting and/or denying each of the movant's assertions in matching numbered paragraphs and supporting each denial with a specific citation to the record where the factual issue arises. (*See* Dkt. No. 24 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 26 [Plf.'s Affid. in Opp'n].)[4] Based on

---

[4] Defendants are respectfully reminded that, with regard to the attorney affidavit submitted in support of their motion (Dkt. No. 24, Attach. 1, at ¶¶ 4-5), attorneys generally do not possess personal knowledge of the underlying facts sufficient to render them competent to adduce an affidavit in support of a summary judgment motion. *See* N.D.N.Y. L.R. 7.1(a)(3) ("[The record on a motion for summary judgment] does not . . . include attorney's affidavits."); Fed. R. Civ. P. 56 (c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see, e.g., Road Dawgs Motorcycle Club of the United States, Inc. v. 'Cuse Road Dawgs, Inc.*, 679 F. Supp. 2d 259, 281-82 & n.54 (N.D.N.Y. 2009) (Suddaby, J.) (finding that defense counsel could not have personal knowledge of facts giving rise to lawsuit, so as to tender affidavit, without becoming witness to lawsuit pursuant to Rules 3.4 and 3.7).

this ground alone, the Court may deny both Defendants' motion and Plaintiff's cross-motion. N.D.N.Y. L.R. 7.1(a)(3).[5] In the interest of thoroughness, however, the Court has conducted a *sua sponte* review of the record, and concluded that, generally, the following material facts *appear* to be undisputed by the parties.

On August 8, 2008, Plaintiff contracted with Defendants for the shipment of the Crane from Baltimore, Maryland, to Troy, New York, between August 11, 2008, and August 13, 2008. Pursuant to the agreement, shipment of the Crane was to take place in five separate loads.[6]

On August 11, 2008, the Crane was delivered by its manufacturer to Defendants in Baltimore, Maryland, in undamaged condition. However, the first three loads were not delivered by Defendants to Troy, New York, until August 14, 2008, and the remaining two loads–which were combined by Defendants into a single load–were not delivered by Defendants to Troy, New York, until August 18, 2008. Defendant provides no explanation as to why the delay occurred.[7]

Moreover, while the first three loads were delivered in undamaged condition, the final load–which contained the "boom top" and "butt section" of the Crane–was delivered in damaged condition. (None of the parts of the Crane delivered in the first three loads were damaged.) The

---

[5] *See* N.D.N.Y. L.R. 7.1(a)(3) ("Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."); *cf. Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 03-CV-6731, 2005 WL 146807, at *1, n.1 (S.D.N.Y. Jan. 21, 2005) ("AEP has not aided in this task, given that its Local Rule 56.1 Statement of Material Facts contains only an enumerated list of exhibits and makes no attempt to synthesize the purportedly undisputed facts. This is not the purpose of the statement . . . .").

[6] (*See, e.g.,* Dkt. No. 26, at 1 [attaching Paragraph 4 of Affid. of Lon Coon]; Dkt. No. 26, at 6 [attaching "Rate Quotation Confirmation," indicting five loads.]; Dkt. No. 26, at 10-11 [attaching "Truck Load Out" Specifications]; Dkt. No. 26, at 24 [email messages from employee of Plaintiff to employee of Defendants].)

[7] (Dkt. No. 26, at 2 [attaching Paragraph 14 of Affid. of Lon Coon]; *see generally* Dkt. No. 3 [Defs.' Joint Reply-Opp'n].)

damage to the parts in the final load appears to have resulted from the "boom top" and "butt section" improperly rubbing and bumping against each other and other pieces of equipment being transported.[8]

The cost to Plaintiff of replacing the damaged "boom top" of the Crane was $20,094.22. The cost to Plaintiff of removing the Crane from the construction site was $11,800.01. The cost to Plaintiff of labor for the return of the damaged "boom top" and "butt section" to Plaintiff's Albany yard was $945.00. The cost to Plaintiff of labor for the delay in delivery was $1,435.00. The cost to Plaintiff of mileage was $1,200.40. The cost to Plaintiff of lost rentals from the project was approximately $13,000.00. The cost to Plaintiff of American Iron's having to procure a replacement Crane was $30,000.00. The total of these seven costs was approximately $78,474.47.

Various communications between the parties during the time of contracting, including contract and shipping documents, stated that the Crane was being shipped to a "job[]" site, where the consignee for the Crane was not Plaintiff but a non-party called "American Iron, Inc." or "American Iron Construction."[9]

However, the Rate Quotation Confirmation, Bill of Lading, and Rules Tariff provided, inter alia, that Defendants' liability for loss or damage to any article or package transported was limited to $2.50 per pound. (While it is unclear whether the "upper boom" of the Crane consisted of all the parts of the Crane alleged in this action to have been damaged, the "upper

---

[8] (*See, e.g.,* Dkt. No. 26, at 3 [attaching Paragraph 17 of Affid. of Lon Coon].)

[9] (*See, e.g.,* Dkt. No. 23, Attach. 3, at 14 ["Pick Up Order – Delivery Order"]; Dkt. No. 23, Attach. 5, at 1 [Bill of Lading]; Dkt. No. 26, at 37-38 [Bills of Lading]; Dkt. No. 26, at 28-29 [Invoices]; Dkt. No. 26, at 23-24 [email messages from employee of Plaintiff employee to employee of Defendants].)

boom" of the Crane weighed 1,060 pounds.)[10]

Granted, the Rate Quotation Confirmation, Bill of Lading, and Rules Tariff further provided, inter alia, that, to declare a value greater than $2.50 per pound, Plaintiff had to (1) declare (and sign) the greater valuation on the Bill of Lading, and (2) contact Defendants for a written alternative rate quote. However, the Rules Tariff further provided that Plaintiff's failure do both things would result in a reversion of Defendants' liability to $2.50 per pound. Similarly, the Bill of Lading provided, inter alia, that Defendants' liability would revert to $2.50 per pound if Plaintiff failed to (3) sign and return the written alternative rate quote to Defendants and (4) pay the increased rate. Plaintiff never did any of these four things.

However, the Rules Tariff provided, inter alia, that certain listed excess value charges shall not apply when the "declared actual cargo value" on the Bill of Lading is not greater than $100,000.00 per trailer.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, is assumed in this Decision and Order, which (again) is intended primarily for the review of the parties. (*Id*.)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828,

---

[10] (Dkt. No. 23, Attach. 4, at 1 ["Packing List Summary," listing the weight as 1,060 pounds, not 1,080 pounds, as asserted by Defendants].)

2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

B.  **Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* Dkt. No. 23, Attach. 2 [Defs.' Memo. of Law]; Dkt. No. 27 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 31 [Defs.' Reply-Opp'n Memo. of Law]; Dkt. No. 33 [Plf.'s Reply Memo. of Law].)

## III.  ANALYSIS

As an initial matter, the Court notes that Plaintiff's two state common-law claims (i.e., for breach of contract and negligence) appear to be precluded by their assertion of a claim under the Carmack Amendment. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913); *Cleveland v. Beltman N. Am. Co., Inc.*, 30 F.3d 373, 378 (2d Cir. 1994); *Fyke Trading USA, Inc. v. New England Motor Freight*, 07-CV-5815, 2008 WL 4443222, at *2 (W.D.N.Y. Sept. 28, 2008); *DiPaolo Mach. Works, Ltd v. Prestige Equip. Corp.*, 998 F. Supp. 229, 233 (E.D.N.Y. March 26, 1998); *Consol. Rail Corp. v. Primary Indus. Corp.*, 868 F. Supp. 566, 573 (S.D.N.Y. Nov. 10, 1994). However, Defendants did not make this argument in their motion for summary judgment. (*See generally* Dkt. No. 23.) As a result, the Court does not have the authority to dismiss Plaintiff's two state law claims *sua sponte*. Rather, it will rely on Plaintiff to voluntarily discontinue those two claims before trial, should the Court be correct in its cursory review of the above-cited case law.

A.   **Whether the Limitation-of-Liability Provision Is Unenforceable Pursuant to the Material Deviation Doctrine**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.C. of this Decision and Order. The Court would add only the following analysis.

Courts in the Second Circuit have rejected the "wholesale importation" of the "material deviation" doctrine from admiralty cases to overland and airborne shipping cases. *Praxair Inc. v. Mayflower Transit, Inc.*, 919 F. Supp. 650, 654 (S.D.N.Y. Jan. 26, 1996) ("Wholesale importation of [the 'material deviation'] doctrine from admiralty to overland or airborne shipping has been rejected in this circuit."); *see, e.g., Tishman & Lipp, Inc. v. Delta Airlines*, 413 F.2d 1401, 1405 (2d Cir.1969); *Lichten v. E. Airlines, Inc.*, 189 F.2d 939, 942 (2d Cir. 1951); *Rafaella Gallery, Inc. v. United Parcel Serv., Inc.*, 818 F. Supp. 53, 54 (S.D.N.Y. 1993).

However, some courts in the Second Circuit have applied the "material deviation" doctrine to overland and airborne cases on a more discrete basis, specifically in the narrow circumstances of where (1) the shipper has requested specialized safety measures to reduce the risk of damage to its cargo, (2) the shipper has paid an additional charge to ensure those measures, and (3) the carrier failed to perform those very measures, resulting in damage to the cargo. *See, e.g., Praxair Inc.*, 919 F. Supp. at 654; *Vigilant Ins. Co. v. World Courier, Inc.*, 07-CV-0194, 2008 WL 2332343, at *6-7 (S.D.N.Y. June 4, 2008); *cf. Nipponkoa Ins. Co., Ltd. v. Watkins Motor Lines*, 431 F. Supp.2d 411, 418 (S.D.N.Y. 2006) ("In other words, a carrier must have made a separate, risk-related promise (special to the particular shipment at issue) to allow a shipper to avoid a liability limitation under the material deviation doctrine.") (internal quotation

marks omitted).[11]

These cases have explained that "[a] separate payment is not required if the separate risk-related promises are included in the rate negotiated between the parties." *Great American Ins. Co. of New York v. TA*, 06-CV-13230, 2008 WL 5335317, at *5 (S.D.N.Y. Dec. 8, 2008). However, such an additional payment is not established simply by the fact that the carrier charged fees higher than other carriers. *Vigilant Ins. Co*, 2008 WL 2332343, at *7 ("The fact that World Courier allegedly charges fees higher than other carriers . . . does not satisfy the requirement that an additional fee be charged.").

Here, the Court can find no admissible evidence in the record from which a rational fact-finder could conclude that Plaintiff paid an additional charge to ensure the specialized safety measures asserted (e.g., the promise to ship the Crane in five different segments in a designated order, in order to lessen the risk of loss). For all of these reasons, the Court must reject Plaintiff's argument that the limitation-of-liability provision is unenforceable pursuant to the material deviation doctrine.

B.  **Whether, in the Alternative, the Limitation-of-Liability Provision Is Unenforceable Due to Lack of Reasonable Notice**

After carefully considering the matter and viewing the evidence in the light most favorable to Plaintiff, the Court finds that a genuine dispute of material fact exists with regard to this issue for the reasons stated in Plaintiff's memoranda of law. *See, supra,* Part I.C. of this Decision and Order. The Court would add only the following analysis.

---

[11] The Court questions how the "material deviation" doctrine–which is essentially an exception to a liability limitation–can be said to be invoked when a shipper has paid an extra cost to *increase* liability. *See* Wesley S. Chused, 36 Transp. L.J. 177, 209-210 (2009) (characterizing the Southern District's decision in *Nipponkoa Ins. Co., Ltd.* as "misguided").

13

There are essentially two requirements of an enforceable limitation on liability under the Carmack Amendment: (1) "the limitation of liability was the result of a fair, open, just and reasonable agreement between carrier and shipper, entered into by the shipper for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount or risk," and (2) "the shipper was given the option of higher recovery upon paying a higher rate." *Shippers Nat'l Freight Claim Council, Inc. v. ICC*, 712 F.2d 740, 746 (2d Cir.1983) (internal quotation marks and citations omitted), *cert. denied*, 467 U.S. 1251 (1984); *accord, Ruston Gas Turbines, Inc. v. Pan Am. World Airlines*, 757 F.2d 29, 30 (2d Cir. 1985); *Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59 (2d Cir. 2000).

In evaluating whether those two requirements have been met, courts have considered such factors as the following: (1) whether the carrier has given adequate notice of the limitation of its liability to the shipper; (2) the economic stature and commercial sophistication of the parties; and (3) the availability of "spot" insurance to cover a shipper's exposure. *Gen. Elec. Co., v. MV Nedlloyd*, 817 F.2d 1022, 1028 (2d Cir.1987), *cert. denied*, 484 U.S. 1011 (1988); *Mech. Tech. Inc. v. Ryder Truck Lines, Inc.*, 776 F.2d 1085, 1087 (2d Cir. 1985); *Ruston Gas Turbines, Inc.*, 757 F.2d at 32-33; *U.S. Gold Corp. v. Fed. Exp. Corp.*, 719 F. Supp. 1217, 1225 (S.D.N.Y. 1989).

Here, based on the current record, it is unclear that Plaintiff had, before the time in question, ever seen the limitation-of-liability provision in the Bill of Lading and Rules Tariff. *See Gemnet Exp., Inc. v. Fed. Exp. Corp.*, 06-CV-2648, 2009 WL 928299, at *7 (S.D.N.Y. March 30, 2009) ("The conditions to be considered . . . [in assessing whether adequate notice of a limitation of liability has been provided to the shipper] include the customer's familiarity with the contract of carriage, the time and incentive under the circumstances to study the provisions of the contract, and any other notice that the customer received outside of the contract.").

14

Indeed, it is unclear, at least based on the current record, whether Plaintiff was a sufficiently "sophisticated shipper that routinely contracts with ocean, rail and motor carriers to deliver millions of dollars worth of heavy construction equipment annually" (Dkt. No. 31, at 9). *See Gemnet Exp., Inc.*, 2009 WL 928299, at *6 ("FedEx argues that actual notice is not required in this case because Gemnet, as a sophisticated shipper, had constructive notice of the terms and conditions in the FedEx Service Guide. . . . The cases cited by FedEx, however, are factually distinct and do not persuade the Court that Gemnet should necessarily be viewed as a sophisticated shipper.").

Moreover, based on Defendants' briefing, it is unclear whether the language of the limitation-of-liability provision–which appeared (arguably pointlessly) to permit Plaintiff to raise Defendants' liability level to $99,999.99 per trailer merely by filling in a greater valuation and signing the Bill of Lading (with no extra cost to Plaintiff)–was sufficiently clear. *See id.* at *7 ("The 'physical characteristics' portion of the test [to assess whether adequate notice of a limitation of liability has been provided to the shipper] focuses on the language, positioning, and actual availability to the customer of the contract terms.").

Similarly, based on the current record and Defendants' briefing, the Court is uncertain whether Plaintiff even received a copy of the Rules Tariff. *Cf. id.* *6 ("[T]he FedEx Pricing Agreement, signed by Gemnet, incorporated by reference the FedEx Service Guide, which contains terms limiting FedEx's liability to $500 for shipments of jewelry, and which states that FedEx does not provide insurance of any kind. It is undisputed, however, that the FedEx Service Guide was never provided to Gemnet.").

These deficiencies in the papers are exacerbated by the fact that Defendants apparently knew (or at least had reason to know) that Plaintiff needed the Crane delivered–in five different

15

segments in a designated order–to a non-party at a construction site by a certain date; however, Defendants never discussed with Plaintiff any increased shipping costs to ensure Defendants' fulfillment of those needs. *See Gemnet Exp., Inc. v. Fed. Exp. Corp.*, 06-CV-2648, 2009 WL 928299, at *6 (S.D.N.Y. March 30, 2009) ("It is also undisputed that Houchens, of FedEx, was aware that it was the nature of Gemnet's business to ship jewelry worth more that $500, but that he never discussed, with Khiyaev, of Gemnet, any insurance of jewelry shipments with high declared values.").

The Court notes that, to the extent that it has overlooked any record evidence removing the existence of a genuine dispute of material fact, Defendants' motion is denied anyway, based on the failure to adduce a Statement of Material Facts that is accurate *and complete*. *See, supra,* note 5 of this Decision and Order. It is not the Court's function to *sua sponte* scour the record, at its own peril, in search for a dispute of material fact.[12]

For all of these reasons, the Court finds that a genuine dispute of material fact exists with

---

[12] *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *Green v. Blood*, 07-CV-0351, 2013 WL 2250370, at *4 (N.D.N.Y. May 22, 2013) (Suddaby, J.) ("It was not Magistrate Judge Peebles' duty to scour the affidavits and exhibits presented by the parties on Defendant's motion for summary judgment–much less the 387 pages contained a random docket entry existing outside of the record on Defendant's motion–in search for a dispute of material fact."); *Continental Ins. Co. v. Coyne Int'l Enter. Corp.*, 700 F. Supp.2d 207, 218 (N.D.N.Y. 2010) (Suddaby, J.) ("It is not the Court's duty to sua sponte sift through a non-movant's record evidence for genuine issues of material fact."); *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *4, 18 & n. 9 (N.D.N.Y. June 20, 2008) (Hurd, J. adopting Lowe, M.J.) ("[T]he Court has no duty to sua sponte scour the 209 pages that comprise Plaintiff's 'affidavit and exhibits' for proof of a dispute of material fact"); *Williamson v. Goord*, 02-CV-0521, 2006 WL 1977438, at *9 (N.D.N.Y. July 11, 2006) (Lowe, M.J., adopted by Sharpe, J.) ("The Court has no duty to assiduously search the record for evidence creating a dispute of material fact, where a plaintiff has failed to file a response to a Statement of Material Facts.").

regard to this issue of whether the limitation-of-liability provision is unenforceable due to a lack of reasonable notice. With regard to Plaintiff's alternative argument that the limitation-of-liability provision is unenforceable on the ground that the provision failed to give Plaintiff reasonable notice of its applicability in the event of an intentional breach, the Court need not, and does not, address that argument, other than to note that (1) the current record does not appear to contain admissible evidence supporting any such intent, and (2) in any event, the intentional-breach argument asserted by Plaintiff appears confined to instances of conversion of cargo for Defendants' own benefit (which also does not appear present here).[13]

### C. Whether Defendants Had Reasonable Notice of Special Damages (Through the Fact that the Crane Was Being Shipped to a Non-Party at a Job Site)

After carefully considering the matter and viewing the evidence in the light most favorable to Plaintiff, the Court finds that a genuine dispute of material fact exists with regard to this issue for the reasons stated in Plaintiff's memoranda of law. *See, supra,* Part I.C. of this Decision and Order. The Court would add only the following analysis.

---

[13] *See, e.g., Kemper Ins. Cos. v. Fed. Exp. Corp.*, 252 F.3d 509, 516 (1st Cir. 2001) ("Because Kemper has made no allegation that FedEx appropriated the property *itself*, or profited from its conversion, the claim does not fit within the doctrine as outlined in these cases.") (emphasis in original); *Am. Cyanamid Co. v. New Penn Motor Exp., Inc.*, 979 F.2d 310, 315-16 (3d 1992) (noting that "nothing short of intentional destruction or conduct in the nature of theft of the property" will void the limitation on liability); *Deiro v. Am. Airlines, Inc.*, 816 F.2d 1360, 1366 (9th Cir. 1987) ("Only an appropriation of property by the carrier for its own use will vitiate limits on liability."); *Rocky Ford Moving Vans v. United States*, 501 F.2d 1369, 1372-73 (8th Cir.1974) ("This is not a case where the carrier has purposefully converted the entrusted property for its own use or gain . . . ."); *Glickfeld v. Howard Van Lines, Inc.*, 213 F.2d 723, 727 (9th Cir. 1954) ("[T]he conversion doctrine is pertinent [as a defense to a limitation of liability defense] only when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability [even] where the conversion is . . . by its own employees.").

As explained above in Part I.C. of this Decision and Order, various communications between the parties during the time of contracting, including contract and shipping documents, stated that the Crane was being shipped to a "job[]" site, where the consignee for the Crane was not Plaintiff but a non-party called "American Iron, Inc." or "American Iron Construction." *See, supra,* note 9 of this Decision and Order. In response to Plaintiff's argument that these facts constituted constructive notice, Defendants has asserted no legal argument explaining why they did not understand from these facts that the specified special damages would naturally flow from a breach. (*Compare* Dkt. No. 27, at 8-9 [Plf.'s Opp'n Memo. of Law]) *with* Dkt. No. 31, at 11-13, 20 [Defs.' Reply-Opp'n Memo. of Law].)

For all of these reasons, the Court finds that a genuine dispute of material fact exists with regard to this issue of whether had reasonable notice of special damages.

### D. Plaintiff's Cross-Motion for Summary Judgment

After carefully considering the matter, the Court denies Plaintiff's cross-motion for summary judgment for the same reasons that it denies Defendants' motion for summary judgment. In addition to the being opposed by admissible record evidence (which is discussed in Defendants' motion papers), Plaintiff's cross-motion is not supported by an accurate and complete Statement of Undisputed Material Facts. (*See generally* Dkt. Nos. 26-29.) The Court would add only that neither the unnumbered unsupported assertions in the "Facts" section of its opposition memorandum of law (Dkt. No. 27, at 1-4 [Plf.'s Opp'n Mem. of Law]) nor the accompanying affidavit adduced by Plaintiff (Dkt. No. 26, at 1-5 [Affid. of Lon Coon]) is a Rule 7.1 Statement of Material Facts. *See* N.D.N.Y. L.R. 7.1(a)(3) (distinguishing between a

"Statement of Material Facts" and an "affidavit[]").[14]

For all of these reasons, Plaintiff's cross-motion is denied.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 23) is **DENIED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 26) is **DENIED**; and it is further

**ORDERED** that counsel are directed to appear on **SEPTEMBER 30, 2013** at 2:00 p.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **SEPTEMBER 13, 2013**, and the parties are directed to engage in meaningful settlement negotiations prior to the 9/30/13 conference. (In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week prior to the scheduled conference).

Dated: August 23, 2013
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[14] *See also U.S. v. Southland*, 04-CR-0345, 2007 WL 3124712, at *2 (N.D.N.Y. Oct. 24, 2007) (Mordue, C.J.) (finding that defendant submitted affidavit but not Rule 7.1 Statement of Material Facts); *cf. Danford v. City of Syracuse*, 09-CV-0307, 2012 WL 4006240, at *1 (N.D.N.Y. Sept. 12, 2012) (Suddaby, J.) (explaining that plaintiff's affidavit did not constitute a response to defendants' statement of material facts).